United States District Court
Southern District of Texas
**ENTERED**
June 23, 2026
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
BROWNSVILLE DIVISION

| | | |
|---|---|---|
| TSEWANG D.., [1]<br>Petitioner, | §<br>§<br>§ | |
| v. | § | CIVIL ACTION NO. 1:25-cv-275 |
| KRISTI NOEM, *et al.,*<br>*in their official capacities*,<br>Respondents. | §<br>§<br>§<br>§ | |

**REPORT AND RECOMMENDATION**
**TO GRANT PETITIONER'S HABEAS PETITION**

Before the Court is Petitioner's "Petition for a Writ of Habeas Corpus" (Dkt. No. 2) ("Petition") and Respondents' "Response to Petition for Writ of Habeas Corpus and Motion for Summary Judgment" (Dkt. No. 9) ("MSJ"). Because Petitioner has established that there is not a significant likelihood of his removal in the reasonably foreseeable future, *see Zadvydas v. Davis*, 533 U.S. 678, 701 (2001), it is recommended that the Court (1) **GRANT** the Petition (Dkt. No. 2), (2) **DENY** the MSJ (Dkt. No. 9), (3) **ORDER** Respondent to release Petitioner subject to supervision and provide a status update verifying such release, and (4) **DIRECT** the Clerk of Court to close this case once that status update has been provided to the Court.

To gain relief under *Zadvydas*, a petitioner must "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future," after which "the Government must respond with evidence sufficient to rebut that showing." *Zadvydas*, 533 U.S. at 701. For the reviewing habeas court, the point of this inquiry is to assess how long "detention" can remain "reasonably necessary to secure removal" and advance the "statute's basic purpose, namely, assuring the alien's presence at the moment of removal." *Id.* at 699. If, as the petitioner aims to establish, "removal is not reasonably

[1] Due to significant privacy concerns in immigration cases and noting that judicial opinions are not subject to Federal Rule of Civil Procedure 5.2, any opinion, order, judgment, or other disposition in this case will refer to the petitioner only by first name and last initial.

foreseeable," *id.*, detention is no longer "reasonably necessary" for removal; the detention, having lost its "reasonable relation" to its statutory "purpose," *id.* at 690, is no longer authorized under § 1231, *id.* at 699; and the petitioner should be released, *see id.* at 700.

While announcing a particular standard for the petitioner's claim for release—*i.e.*, "no significant likelihood of removal in the reasonably foreseeable future"—*Zadvydas* also offered guidance for applying that standard. *Id.* at 701. *Zadvydas* saw, in "indefinite detention," a "serious constitutional problem," *id.* at 690, and it effectively limited the chance that its standard would allow for such detention through two principles relevant to this report, *id.* at 701-02. First, the Court emphasized that the government's good faith efforts to remove a petitioner are not, in themselves, sufficient to establish a significant likelihood of removal. *See id.* at 702. To depend so heavily on such a fact would, in the Court's description, effectively concede to an altogether different standard—one that would "require an alien seeking release to show the absence of *any* prospect of removal…which demands more than our reading of the statute can bear." *Id.* Second, the "reasonably foreseeable future," the window in which petitioner must show removal is not significantly likely, is held to "shrink" the longer petitioner is detained. *Id.* at 701. Time, in this sense, continuously eases petitioner's burden, and "reasonably foreseeable" increasingly means something like imminent. *Id*. The *Zadvydas* inquiry, then, functionally turns more suspicious of detention as it goes on—even if the government is vigorously pursuing the detainee's removal, *see id.* at 702, and even as removal may remain technically plausible, *see id.* at 701.

Petitioner has provided good reason to believe there is no significant likelihood of removal in the reasonably foreseeable future. In short, Petitioner has been detained too long—since "June 8, 2025," now over a year ago. Dkt. No. 9 at 10. Respondents represent that they have been spinning their wheels for over half a year on just one aspect of the removal process: awaiting "[t]ravel documents…from the PRC since December 2, 2025." Dkt. No. 16 at 2. This is not necessarily the fault of the Government, but fault is not the point. The point here is that removal is not at this point imminent, which is functionally necessary for a detention this prolonged.

Respondents do not successfully rebut Petitioner's showing. As just established, the factual record provided by Respondents provides no assurance to the Court of Petitioner's expeditious removal. And Respondents have not convinced the Court of the need for Petitioner to exhaust his administrative remedies in this case. The Court has provided more than enough time for Respondents to conduct the necessary review, *see* Dkt. No. 14, which is ultimately duplicative of findings made in the POCR review Respondents have already conducted, *see* 8 C.F.R. § 241.4(i)(7). While the Court understands that exhaustion is typically required of an immigration detainee seeking habeas relief, *Hinojosa v. Horn*, 896 F.3d 305, 314 (5th Cir. 2018), the purpose of administrative exhaustion is for the administrative entity is to reach a determination, *see Parisi v. Davidson*, 405 U.S. 34, 37 (1972), and here they have already effectively come to one. The Court declines, in this case, to warp the prudential doctrine of exhaustion into killing Petitioner's claim where doing so would be effectively futile, *Hinojosa*, 896 F.3d at 314, subject Petitioner to the judgment of an entity that has already provided this Court their answer to the question the review is meant to pose, *see McCarthy v. Madigan*, 503 U.S. 140, 148 (1992), and aggravate a severe and ongoing constitutional injury, *Petgrave v. Aleman*, 529 F.Supp.3d 665, 672 n14 (S.D. Tex. 2021).

It is thus recommended that the Court (1) **GRANT** the Petition (Dkt. No. 2), (2) **DENY** the MSJ (Dkt. No. 9), (3) **ORDER** Respondent to release Petitioner subject to supervision and provide a status update verifying such release, and (4) **DIRECT** the Clerk of Court to close this case once that status update has been provided to the Court.

The parties have fourteen (14) days from the date of being served with a copy of this Report and Recommendation in which to file written objections, if any, with the United States District Judge assigned to the instant case. 28 U.S.C. § 636(b)(1). When filing an objection, a party must object to specific facts or legal findings in this Report and Recommendation. The District Judge is not required to consider frivolous, conclusive, or general objections. *Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

If any party fails to timely object to any factual or legal findings in this Report and

Recommendation, the District Judge is not required to conduct a de novo review of the record before adopting these findings. If the District Judge chooses to adopt such findings without conducting a de novo review of the record, the parties may not attack those findings on appeal, except on the grounds of plain error. *Alexander v. Verizon Wireless Servs., L.L.C.*, 875 F.3d 243, 248 (5th Cir. 2017).

Signed on June 22, 2026.

Karen Betancourt

Karen Betancourt
United States Magistrate Judge